```
 1                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
                                         Civil Action
 3                                       No. 06-11508-RCL

 4

 5   * * * * * * * * * * * * * * * * * *
     SUZANNA SENSING,                   *
 6                                      *
              Plaintiff,                *
 7                                      *
     v.                                 *  MOTION HEARING
 8                                      *
     OUTBACK STEAKHOUSE OF              *
 9   FLORIDA, INC. and CHARLES          *
     KOZMITS,                           *
10                                      *
              Defendants.               *
11   * * * * * * * * * * * * * * * * * *

12

13           BEFORE:  The Honorable William G. Young,
                             District Judge
14

15

16
     APPEARANCES:
17

18           PAUL H. MERRY, ESQ., 50 Congress Street,
        10th Floor, Boston, Massachusetts 02109, on behalf
19      of the Plaintiff

20
             BELLO, BLACK & WELSH LLP (By John F. Welsh,
21      III, Esq.), 535 Boylston Street, Suite 1102,
        Boston, Massachusetts 02116, on behalf of the
22      Defendants

23
                                         1 Courthouse Way
24                                       Boston, Massachusetts

25                                       April 15, 2008
```

```
 1              THE CLERK:  Calling Civil Action 06-11508, Sensing
 2      v. Outback.
 3              THE COURT:  Would counsel introduce themselves.
 4              MR. MERRY:  Good afternoon, your Honor.  May it
 5      please the Court, my name is Paul Merry.  I'm here
 6      representing plaintiff, Suzanna Sensing, the nonmoving party
 7      in the summary judgment motion.
 8              MR. WELSH:  Representing defendants Charles Kozmits
 9      and Outback Steakhouse of Florida, John F. Welsh, Bello,
10      Black and Welsh.
11              THE COURT:  Yes.
12              Mr. Merry, I recognize you're the nonmoving party,
13      but I think it would sharpen things if I heard you first.
14              Given the nature of the claims here and the record,
15      why isn't summary judgment in order in this case?
16              MR. MERRY:  Your Honor, this case is brought under
17      state law as opposed to federal law.  General Laws,
18      Massachusetts General Laws, Chapter 151B, Section 4,
19      Paragraph 16 reads approximately, as follows:  For any, it
20      is an illegal practice for any employer, personally or
21      through an agent, to, and I'm leaving some words out, to
22      refuse to rehire or otherwise discriminate against, because
23      of his handicap, any person alleging to be a qualified
24      handicapped person, capable of performing the essential
25      functions of the position, a position involved with
```

```
 1    reasonable accommodation.
 2            I mention this to the Court because I think this
 3    provides a bit of a succinct roadmap for us in assessing
 4    Ms. Sensing's claims and the basis for them.
 5            Ms. Sensing, as I believe is clear from the papers,
 6    I hope it's clear from the papers, is a person with multiple
 7    sclerosis.  She was diagnosed with that disease in 2003 or
 8    around at that point, but as the Court may be aware,
 9    multiple sclerosis is a condition that degenerates over
10    time.  She didn't have major impairments attributable to it
11    until approximately November of 2004 when, after returning
12    from a trip with some friends, she experienced numbness and
13    some rather severe symptoms that were severe enough that she
14    was actually bedridden and unable to turn over in bed at
15    some points, she was extremely disabled by this condition.
16            However, with medical care and the passage of time,
17    as is typical with multiple sclerosis, she resumed, she
18    recuperated to the point where she was able to go back to
19    work.  The employer defendant Outback and the defendant
20    Kozmits accommodated her to some degree by, by having staff
21    do some of the lifting problems that she was having trouble
22    with, and some of the other tasks.  And by, I think maybe
23    late February or so she was in a condition where she was
24    able to return to employment fully without restrictions.
25            However, she had a couple of incidents and another
```

```
 1    incident occurred in April which required her to be out of
 2    work.  When she contacted the defendants about resuming
 3    employment, she was essentially told that she would not be
 4    put back to work.  There were a series of conversations, I
 5    believe eight in number, where she approached the defendant
 6    saying, look, I have doctors' notes, in fact, she got, I
 7    think at least two certifications from physicians that she
 8    was capable of resuming her duties as a takeaway person.
 9    And ultimately the defendant Kozmits said to her in one
10    conversation, I'm concerned about you falling and costing
11    the restaurant 200,000 to $300,000, and I can't have that,
12    or words to that effect.
13            He at one point suggested to her that he wanted her
14    to be evaluated by an independent medical examiner, and he
15    said he would provide the name of one.  She contacted him --
16    this was during the sequence of these eight efforts she made
17    to resume employment.  And she contacted him at least twice
18    to try to get the name of that person.  Mr. Kozmits
19    indicates in his deposition that he was trying to get the
20    headquarters of Outback in Florida to identify an
21    appropriate medical examiner, and they never did so, and he
22    never told her of any medical examiner.  And after
23    that point is when she began making this effort to seek
24    legal redress on account of her being, not being restored to
25    employment.
```

```
 1            The law, as I feel fairly confident the Court's
 2   aware, under the disability law basically you have to show
 3   that you're a person who, a qualified person with a
 4   handicap.  Qualified person means someone with a disability
 5   that substantially impairs major life activities.  And I
 6   think that the materials we've offered demonstrate pretty
 7   convincingly that Ms. Sensing meets the test substantial
 8   impairment of major life activity.  Not only do we have
 9   affidavits from Ms. Sensing and her husband concerning her
10   complete incapacity in November of 2004, but we also have
11   affidavits from defendants' witnesses avowing that they saw
12   her unable to perform some of the functions of the job and
13   impaired in the major life activity of walking to the extent
14   that she was dragging her leg, and a variety of other
15   problems.
16            THE COURT:  Maybe I've made a mistake.  I mean, I
17   asked you to go first and you are, very succinctly.
18            Isn't their major argument -- this is where I may
19   be off-base -- that there isn't sufficient evidence in this
20   record from which a fact finder could conclude that she was
21   not restored to employment on account of her handicap, and
22   you have to prove that.
23            Let's start with this.  You recognize you have to
24   prove that?
25            MR. MERRY:  Yes, your Honor, by a preponderance of
```

```
 1   the evidence, and we can use inferential evidence.
 2          THE COURT:  Of course.  And I must draw all
 3   reasonable inferences your way at this stage.
 4          Isn't that their major argument here?
 5          MR. MERRY:  Well, that's certainly one of the
 6   arguments they're making, but I don't see that it offers a
 7   basis on which to grant summary judgment.  And there's two
 8   answers, your Honor.  There's direct -- there's two kinds of
 9   evidence that we can use, inferential or circumstantial
10   evidence, or direct evidence.  Circumstantial evidence is
11   very suggestive from the timing of the decision not to
12   restore her to employment following on the heels of these
13   repeated absences due to her MS condition.  As well as I
14   think that there's material in the comments, testimony, in
15   the depositions and in the affidavits, clearly suggesting
16   that they were well aware of her condition and that they
17   were troubled by her condition.
18          Certainly Erin Ray, who is, it's a little hard to
19   tell if she's a manager or she's something between a manager
20   and a staff person, but she is what they call the key
21   employee, and she was responsible for scheduling, and she
22   testified to her severe doubts concerning Ms. Sensing's
23   condition.
24          So I think that there's circumstantial evidence
25   sufficient to support the claim.  But more importantly,
```

```
 1    there's the direct evidence of when Ms. Sensing called the
 2    individual defendant and said here I am, I'm ready to come
 3    back to work, I have a doctor's clearance.  And he said we
 4    don't want you to come back because we're concerned about
 5    liability, we don't want you to have a fall and incur two or
 6    three hundred thousand dollars of damage.
 7              Now, it's true, your Honor, he did not say we don't
 8    want you to come back because you have multiple sclerosis.
 9    But I think that's a relatively easy inferential leap to
10    make.  He didn't say he's concerned about safety.  He didn't
11    say he's concerned she will fall on someone else.  He is
12    concerned about her specific health condition.  And we would
13    submit to the Court that that's a sufficient basis to
14    support an inference that this was the cause.
15              THE COURT:  Thank you.  Let's hear from -- have I
16    got your major thrust accurately?
17              MR. WELSH:  Yes, your Honor.
18              THE COURT:  All right.
19              MR. WELSH:  Your Honor, three points, four points
20    in brief.
21              First, coming into the case and all the way to
22    plaintiff's deposition, I assumed that her status as a
23    handicapped individual would be beyond dispute.  It was at
24    her deposition where she swore that she had no symptoms of
25    MS since her leave of absence back in November, December,
```

```
 1   and that she was, and she stopped working for us the end of
 2   April or May.
 3           Given that I have a summary judgment standard, the
 4   facts are supposed to be construed in light most favorable
 5   to her, if we assume that's her testimony, she hasn't proved
 6   that she's a disabled individual.  What we have to do here
 7   is discredit her testimony and look at the testimony of
 8   others who are co-workers of her to establish that she is
 9   disabled within the meaning of the statute.
10           Put that aside for now, your Honor.
11           THE COURT:  And let's assume that because -- well,
12   go ahead.  Let's assume that.
13           MR. WELSH:  The second standard, your Honor,
14   whether or not she abandoned the interactive process.
15   Again, on April 21st, she was tearful at work, she was
16   complaining.  Mr. Kozmits talked to her two co-workers who
17   talked with her, they sent her home.  It was a flare-up of
18   her MS condition.  She couldn't feel anything from her waste
19   down.  There's a doctor's note a couple of weeks before
20   establishing that.
21           The next day she shows up to get her check.  It is
22   reported to Mr. Kozmits, the decision maker, by two people
23   that they talked to her, she's in terrible shape, she
24   shouldn't be driving, she can't do her work.
25           Her next scheduled shift is the 23rd.  She calls in
```

```
 1    sick.  Mr. Kozmits meets with her three or four times, the
 2    eight times that they talk about, several conversations
 3    where she said, I want to go back to my takeaway position.
 4    He says I don't know what to do.  I don't think you're able
 5    to.
 6              It ends up on May 5th they have a conversation.
 7    Mr. Kozmits said we would like you to submit to an IME, to
 8    our doctor, to see if you're safe enough to go back to a
 9    takeaway, but in the meantime we'll give you an interim
10    light-duty position as host that you can do that.
11              Her response in her deposition were twofold.
12    First, I don't want an interim job because I can make more
13    if I just file for unemployment.  Second, there was a
14    breakdown in communications between her and Kozmits.  Why
15    didn't you call Mr. Kozmits back?  I decided at that time I
16    had enough.  I was going to leave it with the attorneys.  I
17    thought they were jerking me around.  She didn't follow up.
18    I would submit, your Honor, there's a basic obligation on
19    behalf of an employee seeking an accommodation to follow up,
20    not to walk away.
21              I cited a U.S. Magistrate Collings' case on
22    this point, and there are others.
23              Two other points.  With respect to her disability,
24    the Carroll case in the First Circuit would suggest, if you
25    were disabled back in November, but you were not disabled at
```

```
 1    the time of the alleged discrimination, it raises questions
 2    about your status as a disabled individual.
 3              My last two points, your Honor, on the defamation
 4    claim.  The Barry case by the Supreme Judicial Court talks
 5    directly to this type of situation, pretext reference call.
 6    They said a pretext reference call does not constitute
 7    publication for the purpose of defamation.  It's on all,
 8    that case is on all four points with this claim.  There's an
 9    Appeals Court case in Massachusetts on the same.
10              Lastly, with respect to the contract, your Honor,
11    we still haven't had an identification of the policy that is
12    alleged to have been violated to support a breach of
13    contract.
14              **THE COURT:**  Thank you.  I'll take the matter under
15    advisement.
16              **MR. WELSH:**  Thank you, your Honor.
17              **THE COURT:**  It's been very helpful.  Thank you very
18    much.
19              **MR. MERRY:**  Thank you, your Honor.
20              (Whereupon the matter concluded.)
21
22
23
24
25
```

|     |     |
| --- | --- |
| 1   | **C E R T I F I C A T E** |
| 2   |     |
| 3   |     |
| 4   | I, Donald E. Womack, Official Court Reporter for |
| 5   | the United States District Court for the District of |
| 6   | Massachusetts, do hereby certify that the foregoing pages |
| 7   | are a true and accurate transcription of my shorthand notes |
| 8   | taken in the aforementioned matter to the best of my skill |
| 9   | and ability. |
| 10  |     |
| 11  |     |
| 12  |     |
| 13  |     |
| 14  | /S/ DONALD E. WOMACK<br>_____<br>DONALD E. WOMACK |
| 15  | Official Court Reporter<br>P.O. Box 51062 |
| 16  | Boston, Massachusetts 02205-1062<br>womack@megatran.com |
| 17  |     |
| 18  |     |
| 19  |     |
| 20  |     |
| 21  |     |
| 22  |     |
| 23  |     |
| 24  |     |
| 25  |     |